

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ROBERT BRIDGEWATER**                                                                 **PLAINTIFF**

**vs.**                                                    **CIVIL ACTION NO.:** 1:07cv1273 HSO-JMR

**STATE FARM FIRE AND CASUALTY COMPANY,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, E.A. RENFROE COMPANY,
INC.; GENE RENFROE, JANA RENFROE, and JOHN DOES
1 THROUGH 10**                                                              **DEFENDANTS**

### COMPLAINT
#### JURY TRIAL REQUESTED

COMES NOW PLAINTIFF by and through counsel, and files this First Amended Complaint

against Defendants State Farm Fire and Casualty Company ("State Farm Fire"), State Farm Mutual

Automobile Insurance Company ("State Farm Mutual"), E.A. Renfroe Company, Inc. ("Renfroe

Company"), Gene Renfroe, individually, Jana Renfroe, individually (collectively "the Renfroes"), and

John Does 1 through 10 and alleges as follows:

### PREAMBLE

The Plaintiff in this case is a State Farm policyholder, who was wrongfully denied insurance

benefits following Hurricane Katrina.

Another case has been filed in this Court styled *Glenda Shows, et al. v. State Farm Mutual*

*Automobile Insurance Company, et al.*, on behalf of 22 other State Farm policyholders likewise

denied insurance benefits following Katrina. For these *Shows* plaintiffs, enough investigation and

discovery has been obtained to demonstrate that a RICO Act conspiracy and enterprise led by State

Farm damaged them.

Also, approximately 206 individual cases substantially similar to this case have been filed against State Farm and other entities. The investigation and discovery related to the plaintiff herein and other individual plaintiffs has not proceeded far enough for them <u>at this time</u> to be able to meet the rigorous requirements for pleading a RICO Act complaint, as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court.

However, on information and well-founded belief, the plaintiff herein alleges that State Farm operated and directed not only the RICO Act enterprise which harmed the <u>*Shows*</u> plaintiffs, but in fact operated and directed numerous such enterprises with various engineering and adjusting firms for the same corrupt purpose as the RICO Act enterprise described in <u>*Shows*</u>, and that at least one of these enterprises caused harm to plaintiff herein, and the other individual plaintiffs filing today.

Plaintiff believes and alleges that if he/she is allowed to conduct coordinated discovery together with the other individual plaintiffs filing today, he/she will discover enough specific facts to be able to then file amended complaints alleging RICO counts with requisite factual specificity, re-grouping these plaintiffs according to similar fact patterns and according to which State Farm RICO enterprise damaged them.

Consolidating these cases through discovery and pretrial proceedings would promote the ends of justice, is allowable under FRCP 42, and makes practical sense.

## I.
## PARTIES

1.     At all times material herein, Plaintiff was an adult resident citizen of Harrison County, Mississippi, who owned property located at 413 Sandy Hook, Pass Christian, MS 39571.

2.     Defendant State Farm Fire and Casualty Company is a corporation organized and

existing under the laws of the State of Illinois, with its principal office and place of business located at One State Farm Plaza, Bloomington, Illinois, 71701-0001, and which may be served with process by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644 or on the Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. §83-21-1.

3.      Defendant State Farm Mutual Automobile Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with its principal office and place of business located at One State Farm Plaza, Bloomington, Illinois, 71701-0001, and which may be served with process by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644 or on the Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. §83-21-1.

4.      State Farm Fire and State Farm Mutual are juridically linked by contract and by the fact that the companies operate so that it is impossible to distinguish one company from the other. State Farm Mutual issues the policies for State Farm Fire, and collects the premiums. State Farm Mutual provides the printed policies for State Farm Fire. All claims activities of State Farm Fire are performed by employees of State Farm Mutual. The data processing and computer network functions of State Farm Fire are performed by State Farm Mutual. State Farm Mutual provides State Farm Fire with legal services, marketing services, human resources services, mail service, and security service. *See* Exhibit A, "Master Services Agreement" between State Farm Mutual and State Farm Fire. Therefore, both companies are proper defendants in this action, and will be referred to collectively as "State Farm" herein. State Farm Fire and State Farm Mutual also at all times relevant

herein were each other's agents, alter egos and/or were co-conspirators in the unlawful actions described herein.

5.     Defendant E.A. Renfroe Company, Inc. is a Georgia Corporation, engaged in so-called "catastrophe support services" for insurance companies, including State Farm Fire and State Farm Mutual.  The principal persons controlling and purporting to own Renfroe Company are Defendants Gene and Jana Renfroe, Alabama residents.  The Renfroe Company's principal place of business is located at 2 Chase Corporate Drive, Hoover, Alabama 35244.

6.     On information and belief, Renfroe Company is and has been managed and used by Gene and Jana Renfroe in such a way as to make it the mere instrumentality, agent and alter ego of Gene Renfroe and Jana Renfroe.

7.     At all times relevant to this action, Renfroe Company is doing business in Mississippi, including in Harrison, Hancock, Jackson and other Mississippi counties; made a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; committed a tort in whole or in part in Mississippi; and/or performed work or service in the State of Mississippi. Renfroe Company may be served with process of this Court by delivery of same upon its registered agent under Miss. Code Ann. § 13-3-57, or by the operation of law, or upon any statutorily appointed agent.  Renfroe Company may also be served with process by service on its agent for service of process, CT Corporation System, 645 Lakeland Drive East, Suite 101, Flowood, Mississippi 39232.

8.     Defendants Gene Renfroe and Jana Renfroe ("the Renfroes") are residents of Alabama, who own and operate Renfroe Company.  Gene Renfroe and Jana Renfroe have offices at Renfroe Company's principal place of business, located at 2 Chase Corporate Drive, Hoover Alabama 35244.

9.      On information and belief, Gene Renfroe and Jana Renfroe have managed and used the Renfroe Company in such a way as to make it the mere instrumentality, agent and alter ego of Gene Renfroe and Jana Renfroe.

10.     At all time relevant to this action, Gene Renfroe and Jana Renfroe were doing business in Mississippi, including in Harrison, Hancock, Jackson and other Mississippi counties; made a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; committed a tort in whole or in part in Mississippi; and/or performed work or service in the State of Mississippi.  Gene and Jana Renfroe may be served with process of this Court by delivery of same upon them under Miss. Code Ann. § 13-3-57 at their residence or corporate office located at 2 Chase Corporate Drive, Hoover Alabama 35244, or by operation of law upon any statutorily appointed agent.

11.     Defendants John Does 1-10 are entities affiliated with Defendants and/or have acted in concert with Defendants and whose identities are currently unknown, including *inter alia* engineering companies, adjusting companies, contractors, insurance agents, and individuals employed by these entities.  All allegations and claims asserted herein against Defendants are incorporated herein by reference against John Does 1-10.  Said John Does, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to the Federal Rules of Civil Procedure.

## II.
## SUBJECT MATTER AND PERSONAL JURISDICTION

12.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and

Defendants and the amount in controversy exceeds $75,000.00.

## III.
## VENUE

13.    Venue in this cause is proper in this Court pursuant to 28 U.S.C. §1391, because this suit respects real and personal property which is completely within the district of the United States District Court for Southern District of Mississippi. This suit also respects conduct, acts and/or omissions of the Defendants which occurred completely within the United States District Court for the Southern District of Mississippi, Southern Division.

## IV.
## FACTS

14.    Plaintiff purchased from State Farm a standard "Homeowner's Policy" ("subject policy"), naming him/her as the insured. The subject policy insured Plaintiff's: Dwelling and Dwelling Extension; Personal Property; and loss of use for actual loss sustained. The subject policy was in effect on August 29, 2005. A representative copy of the subject policy is attached hereto as Exhibit "B."

15.    The State Farm policy expressly states on its cover: "Homeowners Policy This is one of the broadest forms available today and provides you with outstanding value for your insurance dollars." State Farm knew that Plaintiff, like many other residents on the Mississippi Gulf Coast, purchased the policy for protection from accidental direct physical loss from hurricanes.

16.    The subject policy provides "all risk" coverage for all "accidental direct physical loss" to Plaintiff's "Dwelling" and "Dwelling Extension" unless the proximate and efficient cause of the loss is one that is expressly excluded by the policy, stating as follows:

**SECTION I-LOSSES INSURED**

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property
described in Coverage A, except as provided in SECTION I -
LOSSES NOT INSURED.

17.     This broad "all risk" coverage includes coverage for loss proximately and efficiently

caused by hurricane wind, including coverage for damage caused by *objects* driven by the hurricane

wind as well as water borne objects, material, or debris.

18.     The subject policy also provides coverage for "accidental direct physical loss" to

Plaintiff's "Personal Property" proximately and efficiently caused by hurricane wind, stating as

follows:

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in
Coverage B caused by the following perils, except as provided in
**SECTION I - LOSSES NOT INSURED**:

**2.      Windstorm or hail**.  This peril does not include loss to
property contained in a building caused by rain, snow, sleet,
sand or dust.  This limitation does not apply when the direct
force of wind or hail damages the building causing an opening
in a roof or wall and the rain, snow, sleet, sand or dust enters
through this opening.

19.     In the late 1990's, State Farm informed the Plaintiff that a mandatory modification of

the policy raising the deductible for hurricane-caused losses was being imposed.  State Farm

subjected Plaintiff and other policyholders to more risk of loss from hurricanes through the

"Hurricane Deductible Endorsement" ("Hurricane Deductible"), or, in the alternative, charged them

an increased premium to ensure insurance coverage for any and all damage to their insured dwelling

and other property caused by a hurricane.

20.     During the time Plaintiff's policy was in effect, State Farm requested and received premium rate increases and/or retained risk (deductible) increases for Plaintiff's policy from the Mississippi Department of Insurance. Said increases were justified by State Farm by the hurricane risks associated with Coastal properties. Defendant utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demands for such rate increases.

21.     For such coverage, Plaintiff agreed and paid State Farm an annual premium. Plaintiff also agreed to pay a deductible to ensure insurance coverage for any and all damage to the insured residence caused by a hurricane, including all damage proximately and efficiently caused by hurricane wind.

22.     Plaintiff, whose residence was near the Gulf of Mexico, purchased the subject policy from State Farm for one of the primary purposes of insuring against any property damage that could proximately and efficiently result from hurricanes impacting the Mississippi Gulf Coast from the Gulf of Mexico.

23.     On August 29, 2005, within the subject policy period, the insured "Dwelling," "Dwelling Extension," and the "Personal Property" therein were damaged by Hurricane Katrina, a Category (4) Hurricane with wind gusts in excess of 140 miles per hour. The area where the insured property was located also sustained tornadoes, microbursts, mesocyclones, and other convective activity. These events caused an "accidental direct physical loss" covered under the subject policy.

24.     The "accidental direct physical loss" sustained by Plaintiff to the insured property was proximately and efficiently caused by hurricane wind, tornadoes, microbursts, mesocyclones, and/or

convective activity and occurred in the absence and/or independent of water, thereby triggering full coverage for all Plaintiff's hurricane losses.

25.     Hurricane Katrina's devastating and catastrophic hurricane winds, tornadoes, microbursts, and mesocyclones occurred 4-6 hours before the peak hurricane storm surge, and destroyed Plaintiff's property prior to the arrival of storm surge from Hurricane Katrina.

26.     Almost immediately thereafter, and in accordance with the subject policy provisions, Plaintiff notified State Farm of his/her "accidental direct physical loss" and performed all obligations imposed on him/her by the policy.

27.     However, State Farm failed to fairly, adequately, and sufficiently investigate and adjust Plaintiff's "accidental direct physical loss" under the policy.

28.     Instead, State Farm, along and in coordination with its retained adjusting and engineering firms, including, but not limited to, E.A. Renfroe, HAAG Engineering Company, and Forensic Analysis and Engineering Corporation, embarked on a calculated course of conduct designed to deny the covered losses of the Plaintiff and all its other policyholders on the Mississippi Gulf Coast who suffered loss from Hurricane Katrina.

29.     In adjusting Plaintiff's "accidental direct physical loss," State Farm failed to make any adequate good faith determination and/or distinction of which part of the loss was proximately and effectively caused by "water" or which damages were proximately and effectively caused by wind, objects driven by the wind, and/or wind borne or water borne objects, material or debris. State Farm also failed to unconditionally tender to Plaintiff the amount of damage that it could not prove by a preponderance of the evidence was caused by hurricane water. In essence, State Farm improperly shifted the burden of proving coverage for the "accidental direct physical loss" to Plaintiff.

30.     State Farm, based on its inadequate claims investigation and adjustment that was speculative, inadequate, and inconclusive as to how much of Plaintiff's "accidental direct physical loss" was caused by "water," if any, hurricane wind, wind borne or water borne objects, material or debris, denied Plaintiff's claims for hurricane damage and failed to pay Plaintiff for the amount of his/her loss that it could not prove by a preponderance of evidence was caused by hurricane "water." In denying Plaintiff's claim, State Farm cited the policy's "flood" exclusion, which states as follows:

> 2.     We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> c.     **Water Damage**, meaning:
> (1)     flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

31.     State Farm denied Plaintiff's total loss even though it failed as a matter of fact and Mississippi law to (1) sufficiently investigate the loss; (2) carry its affirmative burden of establishing by a preponderance of the evidence at the time of the denial that the proximate and efficient cause of Plaintiff's loss was proximately and effectively caused by "Water Damage" as defined and limited in the exclusion; (3) carry its affirmative burden of establishing by a preponderance of the evidence at the time of the denial the amount of Plaintiff's loss caused by water and the amount caused by wind and wind borne or water borne objects, material or debris; or (4) pay Plaintiff for the amount of his/her loss that it could not prove by a preponderance of the evidence was caused by "water." As a

10

result of State Farm's failures, Mississippi law precludes reliance on the "water damage" exclusion and raises a duty to pay Plaintiff for the entire loss. State Farm's failure to pay Plaintiff all insurance proceeds promptly upon completion of its alleged investigation is without legitimate or arguable reason in fact or law.

32.     In denying Plaintiff's claim, State Farm improperly relied on a scientifically erroneous generic engineering report from Tim Marshall and HAAG Engineering Company which erroneously concluded that all of the damage to insured property on the Mississippi Gulf Coast, including that of the Plaintiff, was caused by water. State Farm instructed and expected all of its adjusters, including E.A. Renfroe, and engineers to utilize the HAAG Report in adjusting and denying claims for Katrina damage under the State Farm policy. HAAG, at State Farm's direction, even conducted seminars in which it trained State Farm and E.A. Renfroe adjusters on how to adjust and deny claims under the subject policy's "water damage" exclusion.

33.     E-mails obtained from Forensic indicate that State Farm uniformly pressured and coerced its retained engineering firms, through threats of non-payment and withholding of future business, to: (1) conclude that all of the damage sustained by Plaintiff and other State Farm policyholders was caused by water; and (2) change any report that concluded the cause of the loss was wind.

34.     State Farm's improper burden shifting and failure to satisfy its burden of proving an excluded cause in Plaintiff's case was part of a concerted course of conduct by State Farm to deny and/or underpay Katrina damage claims in order to force the Plaintiff and other State Farm policyholders to initiate years of protracted litigation just to recover the insurance payments that should have been paid to them unconditionally during the claims process and prior to denial.

11

35.     State Farm's investigation, adjustment, and denial of Plaintiff's claim were negligent, grossly negligent, and reckless.  State Farm's denial of coverage for Plaintiff's total loss breached the subject contract of insurance.  Such conduct also constitutes bad faith and tortious breach of contract and breach of the duty of good faith and fair dealing.  State Farm has forced its customers to litigate in order to receive benefits that should have been paid immediately under the subject policy.

36.     Renfroe Company employees worked in the State Farm Catastrophe Office in Gulfport, Mississippi, and worked with Lecky King and other State Farm employees on a daily basis. In so doing, these employees directly participated in the ongoing conspiracy to deny Katrina-ravaged Gulf Coast State Farm Policyholders, including plaintiff, a fair adjustment and the full amount owed to them under their insurance contracts with State Farm.  Renfroe Company employees knew and understood that said conspiracy was ongoing, and the policyholders, including plaintiff herein, were being cheated with trumped-up, pre-determined engineering reports, but Renfroe Company did not inform plaintiff, or anyone else, of these unlawful activities by State Farm and the other defendants for months.  Rather, Renfroe Company consciously chose to assist State Farm by hiding the existence of double reports from the policyholders, including plaintiff, thereby defrauding plaintiff and others into accepting for a time an inadequate and illegal adjustment of their claims.

37.     When the Renfroe Company employees working with Lecky King in the State Farm Catastrophe Office in Gulfport finally reported the aforesaid fraudulent conduct to the authorities, Renfroe Company, Gene Renfroe and Jana Renfroe caused these whistleblower Renfroe employees to be fired, for the purpose of protecting the secrecy of the aforesaid conspiracy and illegal misconduct by State Farm, Renfroe Company, and others, for the purpose of aiding and abetting said misconduct.

38.     Moreover, Renfroe Company, Gene Renfroe and Jana Renfroe caused Renfroe Company to bring a lawsuit for breach of contract against Renfroe's said whistleblower employees in federal court in Alabama, solely for the purpose of intimidating these whistleblowers, silencing them, and discovering what documents these whistleblowers had turned over to federal and Mississippi authorities conducting criminal investigations into the fraudulent claims practices. The underlying purpose of said lawsuit was to protect, aid, and abet the unlawful conduct of State Farm Mutual and State Farm Fire, as described herein.

## V.
## COUNT ONE
### NEGLIGENCE/GROSS NEGLIGENCE/RECKLESS DISREGARD FOR RIGHTS OF PLAINTIFF
### (AGAINST STATE FARM MUTUAL AND STATE FARM FIRE)

39.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

40.     State Farm had a duty under Mississippi law to fully, fairly, adequately and correctly investigate and adjust Plaintiff's claims for hurricane damage.

41.     State Farm breached this duty by failing to adequately investigate and adjust Plaintiff's "accidental direct physical loss" in the following ways:

42.     State Farm breached its duty by denying Plaintiff's claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiff's loss was proximately and efficiently caused by "water damage," a peril excluded by the policy.

43.     State Farm breached its duty by denying Plaintiff's claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence,

which amount of Plaintiff's loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

44.     Similarly, State Farm breached its duty by failing to pay Plaintiff for the damage it could not prove by a preponderance of the evidence was caused by "water."

45.     State Farm breached its duty by shifting to Plaintiff the burden of proving that his/her loss was <u>not</u> excluded by the policy.

46.     State Farm breached its duty by dispatching an adjuster to investigate, adjust, and deny Plaintiff's loss who did not have the qualifications or training to determine the cause of Plaintiff's loss.

47.     State Farm breached its duty by failing to properly train its adjuster on how to investigate and adjust Plaintiff's loss.

48.     State Farm breached its duty by basing its denial of Plaintiff's claims for hurricane damage on the investigation and adjustment of an unqualified adjuster.

49.     State Farm breached its duty by failing to adequately inspect, investigate or adjust the insured property prior to denying the claim.

50.     State Farm breached its duty by denying Plaintiff's total loss without conducting a complete, full, fair, and adequate investigation and adjustment of Plaintiff's claim for damage under the policy.

51.     State Farm breached its duty by failing to credit the statements from eyewitnesses in investigating and adjusting Plaintiff's claim.

52.     State Farm breached its duty by failing to utilize an objective meteorologist or structural engineer to determine the cause of Plaintiff's loss prior to denying the claim.

53.     State Farm breached its duty by pressuring and coercing its retained engineering firms to conclude that water caused all of the loss to Plaintiff's insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

54.     State Farm breached its duty by relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

55.     State Farm breached its duty by denying Plaintiff's claims without knowing what caused the loss or undertaking any effort to find out.

56.     State Farm breached its duty by failing to pay Plaintiff for his/her loss.

57.     Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff's rights as a State Farm insured.

58.     State Farm's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiff's economic and other damages.

### COUNT TWO
#### BREACH OF CONTRACT
#### (AGAINST STATE FARM MUTUAL AND STATE FARM FIRE)

59.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

60.     Plaintiff entered into an insurance contract with State Farm in which he/she contracted for, purchased, and was entitled to receive full insurance coverage under the subject policy for all "accidental direct physical loss" or "collapse" to the insured Dwelling and other structures and additional living expense. Plaintiff similarly contracted for insurance coverage for all "accidental direct physical loss" to the personal contents proximately and efficiently caused by

15

hurricane wind.

61.    Plaintiff suffered an "accidental direct physical loss" under the subject policy.

62.    Hurricane Katrina is considered to be a windstorm under the subject policy.

63.    The overwhelming meteorological and physical evidence at the site of the insured property, surrounding area, and eyewitnesses established that insured property was proximately and efficiently destroyed by hurricane wind, tornadoes, microbursts, mesocyclone activity in the absence of and prior to the arrival and inundation of any storm surge.

64.    Plaintiff satisfied his/her obligations under the subject policy by submitting a claim showing that he/she sustained an "accidental direct physical loss" as a result of Hurricane Katrina, a windstorm.  However, State Farm breached the subject policy by unjustifiably denying insurance coverage for Plaintiff's loss in the following ways:

65.    State Farm breached the subject policy by denying Plaintiff's claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiff's "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

66.    State Farm breached the subject policy by denying Plaintiff's claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence, which amount of Plaintiff's loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

67.    Similarly, State Farm breached the subject policy by failing to pay Plaintiff for the damage it could not prove by a preponderance of the evidence was caused by "water."

68.    State Farm breached the subject policy by shifting to Plaintiff the burden of proving

16

that his/her loss was not excluded by the policy.

69.    State Farm breached the subject policy by denying Plaintiff's claims for hurricane damage without being able to meet its burden of proving by a preponderance of the evidence that Plaintiff's loss was not caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

70.    State Farm breached the subject policy by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiff's claims for hurricane damage.

71.    State Farm breached the subject policy by denying Plaintiff's claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

72.    State Farm breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

73.    State Farm breached the subject policy by denying Plaintiff's claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

74.    State Farm breached the subject policy by unfairly treating and adjusting Plaintiff's claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

75.    State Farm breached the subject policy by negligently, grossly negligently, and/or

recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment and investigation of Plaintiff's loss prior to denying such loss.

76.    State Farm breached the subject policy by denying Plaintiff's claims for hurricane damage without conducting an adequate, proper, honest, and good faith adjustment, inspection and investigation of Plaintiff's loss.

77.    State Farm breached the subject policy by basing its denial of Plaintiff's loss on an inadequate investigation, inspection, and adjustment of Plaintiff's loss.

78.    State Farm breached the subject policy by basing its denial of Plaintiff's claims for hurricane damage on the investigation, inspection, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

79.    State Farm breached the subject policy by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiff's claims for hurricane damage.

80.    State Farm breached the subject policy by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiff's insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

81.    State Farm breached the subject policy by failing to construe the policy in favor of coverage for Plaintiff's loss.

82.    State Farm breached the subject policy by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiff, caused by Hurricane Katrina.

83.     State Farm's breaches of contract have proximately caused Plaintiff's economic and other damages.

## COUNT THREE
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (AGAINST ALL DEFENDANTS)

84.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

85.     State Farm breached its duty of good faith and fair dealing to Plaintiff by unjustifiably denying the insurance coverage for Plaintiff's insured loss through the following ways:

86.     State Farm breached its duty of good faith and fair dealing by denying Plaintiff's claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiff's "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

87.     State Farm breached its duty of good faith and fair dealing by denying Plaintiff's claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence which amount of Plaintiff's loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

88.     Similarly, State Farm breached its duty of good faith and fair dealing by failing to pay Plaintiff for the damage it could not prove by a preponderance of the evidence was caused by "water."

89.     State Farm breached its duty of good faith and fair dealing by shifting to Plaintiff the burden of proving that his/her loss was not excluded by the policy.

90.     State Farm breached its duty of good faith and fair dealing by denying Plaintiff's

claims for hurricane damages without being able to meet its burden of proving by a preponderance of the evidence that Plaintiff's loss was not caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

91.    State Farm breached its duty of good faith and fair dealing by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiff's claims for hurricane damage.

92.    State Farm breached its duty of good faith and fair dealing by denying Plaintiff's claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

93.    State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

94.    State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached its duty of good faith and fair dealing by denying Plaintiff's claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

95.    State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached its duty of good faith and fair dealing by unfairly treating and adjusting Plaintiff's claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

96.     State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached its duty of good faith and fair dealing by negligently, gross negligently, and/or recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiff's claims for hurricane damage prior to denying such claims.

97.     State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached its duty of good faith and fair dealing by denying Plaintiff's claims for hurricane damage without conducting an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiff's claims for hurricane damage under the policy.

98.     State Farm, aided and abetted by the Renfroe Company and Gene and Jana Renfroe, individually, breached its duty of good faith and fair dealing by basing its denial of Plaintiff's claim for hurricane damage on an inadequate investigation, inspection, and adjustment of Plaintiff's loss.

99.     State Farm breached its duty of good faith and fair dealing by basing its denial of Plaintiff's claims for hurricane damage on the investigation, inspection, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

100.    State Farm breached its duty of good faith and fair dealing by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiff's claims for hurricane damage.

101.    State Farm breached its duty of good faith and fair dealing by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiff's insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

102.    State Farm breached its duty of good faith and fair dealing by failing to construe the policy in favor of coverage for Plaintiff's loss.

21

103.    State Farm breached its duty of good faith and fair dealing by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiff, caused by Hurricane Katrina.

104.    Such conduct by State Farm, the Renfroe Company, and Gene and Jana Renfroe, individually, violates the standards of decency, fairness, and reasonableness.

105.    Defendants' breaches of the duty of good faith and fair dealing have proximately caused Plaintiff's economic and emotional damages.

### COUNT FOUR
### BAD FAITH AND TORTIOUS BREACH OF CONTRACT
### (AGAINST STATE FARM MUTUAL AND STATE FARM FIRE)

106.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

107.    State Farm tortiously, maliciously, and in bad faith breached the subject policy by refusing to provide full insurance coverage under the subject policy for Plaintiff's "accidental direct physical loss" without a legitimate or arguable reason in fact or law in the following ways:

108.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiff's "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

109.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claim without meeting its affirmative

burden of establishing at the time of the denial by a preponderance of the evidence which amount of Plaintiff's loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

110.   Similarly, State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to pay Plaintiff for the damage it could not prove by a preponderance of the evidence was caused by "water."

111.   State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by shifting to Plaintiff the burden of proving that his/her loss was not excluded by the policy.

112.   State Farm's improper burden shifting and failure to satisfy its burden of proving an excluded cause in Plaintiff's case was part of a concerted course of conduct by State Farm to deny and/or underpay Katrina damage claims in order to force the Plaintiff and other State Farm policyholders to initiate years of protracted litigation just to recover the insurance payments that should have been paid to them unconditionally during the claims process and prior to denial.  This business plan of purposefully denying all claims regardless of the merits in order to save money was first proposed to State Farm by its consulting company McKenzie and Company in the early 1990s. Since then, State Farm has adopted and implemented this fraudulent claims strategy in the handling of claims brought under both its Auto and Property Insurance lines with unprecedented success and savings.  State Farm is now the most profitable insurance company in the United States.

113.   State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claims for hurricane damages without being able to meet its burden of proving by a preponderance of the evidence that Plaintiff's loss was not

caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

114.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiff's claims for hurricane damage.

115.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

116.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

117.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

118.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by unfairly treating and adjusting Plaintiff's claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

119.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by negligently, gross negligently, and/or recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment, and investigation of

Plaintiff's claims for hurricane damage prior to denying such claims.

120.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiff's claims for hurricane damage without conducting an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiff's claims for hurricane damage under the policy.

121.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by basing its denial of Plaintiff's claim for hurricane damage on an inadequate investigation, inspection, and adjustment of Plaintiff's loss.

122.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by basing its denial of Plaintiff's claims for hurricane damage on the inspection, investigation, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

123.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiff's claims for hurricane damage.

124.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiff's insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

125.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to construe the policy in favor of coverage for Plaintiff's total loss.

126.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiff caused by Hurricane Katrina.

127.    State Farm's tortious, malicious, and bad faith conduct towards Plaintiff as alleged above was grounded in and consistent with State Farm policies, procedures, and a general corporate course of conduct in handling all damage claims in catastrophes like Hurricane Katrina.

128.    State Farm's tortious, malicious, and bad faith breaches of contract have proximately caused Plaintiff's economic and emotional damages.

129.    State Farm's acts and conduct as alleged above were willful, wanton, malicious, grossly negligent, and done with reckless disregard for the rights of Plaintiff, thereby arising to the level of an independent tort and entitling Plaintiff to an award of Punitive Damages.

## COUNT FIVE
### WAIVER & ESTOPPEL
### (AGAINST STATE FARM MUTUAL AND STATE FARM FIRE)

130.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

131.    State Farm had the obligation and duty to establish what, if any, part of the total loss fell under the terms of its exclusion.  By declaring its burden of proof irrelevant and intentionally abandoning its burden of establishing what, if any, part of the loss was excluded and thereby shifting its burden of proof to Plaintiff, State Farm waived its right to exclude any part of the loss.

132.    State Farm's conduct and denial constitutes a waiver of its right to now inspect the

insured property; reinvestigate the cause of loss, or utilize engineering and/or meteorologist to do what should have been done prior to the denial. State Farm therefore waived its right to make any causal determination of the loss now that the matter is in litigation, and should be estopped from being able to conduct any kind of post-denial investigation, inspection of the insured property, or utilizing different litigation experts to now determine the cause of the loss and "clean up" its bad faith conduct. State Farm should further be estopped from using litigation experts to now determine the cause of loss and justify its invalid denial.

**COUNT SIX**
**FRAUDULENT CLAIMS PRACTICES**
**(AGAINST ALL DEFENDANTS)**

133.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

134.    The massive number of State Farm insured homes destroyed by Hurricane Katrina left State Farm facing huge losses after Katrina. To reduce its financial exposure, State Farm then conceived and instituted a fraudulent course of claims practices to be applied to Katrina "slab" claims and other damage claims, including that of Plaintiff.

135.    The claim of Plaintiff for his/her Hurricane Katrina damages was wrongfully denied pursuant to State Farm's scheme of fraudulent and deceptive claims practices.

136.    State Farm, in effect re-wrote its contract and its claims procedures for "slab" cases destroyed by wind and water and embarked on an intentional course of pre-litigation and post-litigation conduct fraudulently concealed from Plaintiff and deliberately designed to deny Plaintiff's legitimate claims under his/her State Farm contract and Mississippi law.

137.    The actions of State Farm constitute a deliberate course of company-wide fraudulent

27

post-Katrina claims handling practices by which State Farm intentionally undertook to defraud the Plaintiff.

138.   Said actions by State Farm constitute fraud, fraudulent concealment, and fraudulent inducement, as well as bad faith claims handling on an institutional basis in the handling by State Farm of Katrina damage claims.  The actions by State Farm were intended to, and did, result in the intentional and fraudulent denial of the claims of the Plaintiff whose home was destroyed by the Hurricane.

139.   The actions of State Farm were undertaken with willful and deliberate disregard of the rights of the Plaintiff.  The actions of State Farm warrant the imposition of extra-contractual and punitive damages under Mississippi law and the United States Constitution.

140.   The Renfroe Company, and Gene and Jana Renfroe, individually, were active participants in all of State Farm's fraudulent conduct, and thus played an integral role in the institutional fraud committed by State Farm.

141.   The Renfroe Company employees directly participated in the ongoing conspiracy to deny Katrina-ravaged Gulf Coast State Farm Policyholders, including plaintiff, a fair adjustment and the full amount owed to them under their insurance contracts with State Farm.  Renfroe Company employees knew and understood that said conspiracy was ongoing, and the policyholders, including plaintiff herein, were being cheated with trumped-up, pre-determined engineering reports, but Renfroe Company did not inform plaintiff, or anyone else, of these unlawful activities by State Farm and the other defendants for months.  Rather,

142.   The Renfroe Company consciously chose to assist State Farm by hiding the existence of double reports from the policyholders, including plaintiff, thereby defrauding plaintiff and others

into accepting for a time an inadequate and illegal adjustment of their claims.

143.    When the Renfroe Company employees working with Lecky King in the State Farm Catastrophe Office in Gulfport finally reported the aforesaid fraudulent conduct to the authorities, the Renfroe Company, Gene Renfroe and Jana Renfroe caused these whistleblower Renfroe employees to be fired, for the purpose of protecting the secrecy of the aforesaid conspiracy and illegal misconduct by State Farm, Renfroe Company, and others, for the purpose of aiding and abetting said misconduct.

144.    The Renfroe Company and Gene and Jana Renfroe, individually, caused Renfroe Company to bring a lawsuit for breach of contract against Renfroe's whistleblower employees in federal court in Alabama, solely for the purpose of intimidating these whistleblowers, silencing them, and discovering what documents these whistleblowers had turned over to federal and Mississippi authorities conducting criminal investigations into the fraudulent claims practices.

145.    The underlying purpose of said lawsuit was to protect, aid, and abet the unlawful conduct of State Farm Mutual and State Farm Fire, as described herein.

### COUNT SEVEN
### AIDING AND ABETTING; CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

146.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

147.    The Renfroe Company, and Gene and Jana Renfroe, individually, aided and abetted Defendant State Farm in its wrongful and fraudulent denial of Plaintiff's insurance claim. Defendants had knowledge of State Farm's tortious, wrongful and fraudulent claims handling activities that affected the adjustment of Plaintiff's claim and all other State Farm policyholders on

29

the Mississippi Gulf Coast, and yet gave substantial assistance to such conduct.

148.   Moreover, the Renfroe Company, and Gene and Jana Renfroe, individually had knowledge of State Farm's tortious, wrongful and fraudulent denial of Plaintiff's claims for hurricane damage under the subject policy, and yet gave substantial assistance to State Farm in such conduct.

149.   The Renfroe Company, and Gene and Jana Renfroe, individually, also acted in concert with Defendant State Farm in its scheme to wrongfully and fraudulently deny insurance benefits to Plaintiff. Defendant State Farm developed a pretextual basis for claim denial, relying in whole or part on actions of Defendants.

150.   The Renfroe Company, and Gene and Jana Renfroe, individually, knew that their actions were aiding and abetting State Farm in its efforts to develop pretextual grounds for claim denial.

151.   The conduct and actions of the Renfroe Company, and Gene and Jana Renfroe, individually, in this regard substantially assisted and encouraged Defendant State Farm in its fraudulent denial of Plaintiff's insurance claim. Through such conduct, Defendants acted in concert with Defendant State Farm in their common plan to obscure the true cause of the loss suffered by Plaintiff.

152.   The Renfroe Company, and Gene and Jana Renfroe, individually, further substantially assisted, acted in concert pursuant to a common plan, and acted a joint and concurrent tortfeasor in Defendant State Farm's fraudulent denial of Plaintiff's insurance claim.

153.   The above actions of all Defendants, and each of them, were in furtherance of a civil conspiracy to deny legitimate insurance claims, including Plaintiff's claim, without legitimate or arguable reason in fact or law. Such actions violate not only the duty of good faith and fair dealing,

but were so grossly negligent and committed in reckless disregard of the rights of Plaintiff that they violate Mississippi statutory law and constitute negligence *per se*.

154.    The object of the conspiracy between the Renfroe Company, and Gene and Jana Renfroe, individually, and Defendant State Farm was to deny legitimate claims of coverage and was in violation of both the criminal statutes of the State of Mississippi and the positive duties placed on Defendants by Mississippi substantive law.

## COUNT EIGHT
### THIRD PARTY BREACH OF CONTRACT
### (AGAINST RENFROE COMPANY, GENE RENFROE AND JANA RENFROE)

155.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in all other paragraphs of the Complaint.

156.    Upon information and belief, the Renfroe Company, and Gene and Jana Renfroe, individually, entered into various agreements with their own employees, with each other, and/or with State Farm, whereby each defendants accepted certain responsibilities with respect to State Farm insurance policies in force, including plaintiff's, at the time of Hurricane Katrina. These agreements established standards, expectations, and duties of the Renfroe Company and their employees in regard to investigating, adjusting or otherwise handling policyholders' Katrina-related claims. On information and belief, the defendants undertook the contractual duties with each other to fully, fairly, adequately, timely, and honestly adjust and otherwise deal with the Katrina-related claims of plaintiffs and others.

157.    This plaintiff was within the scope of each of these agreements as a party of interest and/or as an intended beneficiary.

158.    The Renfroe Company and Gene and Jana Renfroe, individually, breached said

31

agreements by failing to fully, fairly, adequately, timely, or honestly investigate plaintiff's claims for Katrina-related damages; by failing to perform their contractual duties; by failing to operate in good faith with plaintiff; by failing to operate legally and in accordance with Mississippi law and with relevant professional standards employed in the insurance industry.

159.    As a result thereof, plaintiff has not received the benefit of said agreements, and has suffered economic and other damages.

## VI.
## REMEDIES

160.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

161.    As a direct and proximate result of State Farm's negligence, gross negligence, reckless disregard for Plaintiff's rights as a State Farm insured, breach of contract, breach of duty of good faith and fair dealing, and bad faith and tortious breach of contract without a legitimate or arguable reason in fact or law, Plaintiff is entitled to the following relief:

(A)    Payment for all contractual benefits for all coverages afforded to Plaintiff under the subject State Farm policy for damage to his/her insured residence and personal contents caused by Hurricane Katrina, with interest on all amounts due Plaintiff under his/her policy;

(B)    Prejudgment interest on the amounts owing to Plaintiff in contractual or policy benefits with interest, retroactive to August 29, 2005;

(C)    Compensatory damages on the tort claims for mental distress, emotional harm, and other losses and damages suffered by Plaintiff as a proximate result on the denial

of coverage. Plaintiff is entitled on his/her contract claims to consequential damages, including but not limited to the amounts Plaintiff expended or lost in trying to subsist without insurance benefits since August 29, 2005.

(D)     On all claims Plaintiff is entitled to recovery for humiliation, stigmatization in the Plaintiff's communities, embarrassment, and mental distress proximately caused by State Farm's bad faith denial of his/her claim;

(E)     For the intentionally tortious actions of all defendants, compensatory damages as described above, and as further provided under Mississippi law, Plaintiff is entitled to recovery of his/her attorney fees and costs of litigation for such intentional acts committed by State Farm;

(F)     Extra-contractual damages for State Farm's tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct, which arose to the level of an independent tort, including but not limited to, compensatory damages for all out-of-pocket expenses incurred by reason of State Farm's refusal to pay contractual benefits, mental distress and/or emotional harm caused or contributed to by Defendants' bad faith refusal to honor its contract of insurance, and recovery of attorney fees and litigation expenses incurred by Plaintiff by reason of Defendants' denial of insurance coverage, including mental distress, all out-of-pocket expenses and attorney fees and expenses incurred by Plaintiff; and

(G)     Punitive and exemplary damages for Defendants' tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort, including but not limited to, an award of punitive damages sufficient to punish and deter Defendants, make an example of the Defendants to discourage other

insurers from engaging in such misconduct, taking into account Defendants' financial condition, all in an amount sufficient to achieve the public purposes underlying an award of punitive damages as may be determined by the Court and/or jury; prejudgment interest on all amounts in contractual benefits and compensatory damages awarded by the Court and/or jury; and all costs of the litigation, including but not limited to reasonable attorney fees, incurred in prosecuting this action and any subsidiary or auxiliary actions that arise in determining the losses of the individual Plaintiff by reason of the non-payment of contractual benefits, in an amount to be determined by the Court following conclusion of all proceedings herein; and

   (H) An Order estopping Defendants from now inspecting the insured property or determining the cause of loss based on its denial and post-denial conduct.

162. Plaintiff respectfully requests such further general or specific relief to which he/she is entitled to at law or in equity.

163. Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 18th day of December, 2007.

**ROBERT BRIDGEWATER, PLAINTIFF**

By: *Mary McAlister*

Mary E. McAlister (MS Bar No. 2170)
Attorney for Plaintiff

34

**OF COUNSEL:**

Mary E. McAlister (MS Bar No. 2170)
Derek A. Wyatt (MS Bar No. 7413)
David Neil McCarty (MS Bar No. 101620)
Nutt & McAlister, P.L.L.C.
605 Crescent Boulevard, Suite 200
Ridgeland, Mississippi  39157
Telephone: (601) 898-7302
Facsimile: (601) 898-7304

Don John W. Barrett (MS Bar No. 2063)
Marshall H. Smith, Jr. (MS Bar No. 99239)
David Malcolm McMullan, Jr.
Barrett Law Offices
Post Office Box 987
Lexington, MS  39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Dewitt M. Lovelace (MS Bar No. 1449)
Lovelace Law Firm, P.A.
36474 Emerald Coast Parkway, Suite 4202
Destin, FL  32541
Telephone: (850) 837-6020
Facsimile: (850) 837-4093

Zach Butterworth
Michael Hesse
Gary Yarborough, Jr.
Hesse & Butterworth, PLLC
841 Highway 90
Bay St. Louis, MS 39520